# STATE OF WEST VIRGINIA

## SUPREME COURT OF APPEALS

**FILED**

December 2, 2014

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**GLORIA J. PERKINS,**
**Claimant Below, Petitioner**

**vs.)   No. 14-0167**  (BOR Appeal No. 2048549)
                    (Claim No. 940004426)

**THE HOMER LAUGHLIN CHINA COMPANY,**
**Employer Below, Respondent**


## MEMORANDUM DECISION

Petitioner Gloria J. Perkins, by Patrick Maroney, her attorney, appeals the decision of the West Virginia Workers' Compensation Board of Review. The Homer Laughlin China Company, by Lucinda Fluharty, its attorney, filed a timely response.

This appeal arises from the Board of Review's Final Order dated January 23, 2014, in which the Board reversed a June 21, 2013, Order of the Workers' Compensation Office of Judges. In its Order, the Office of Judges reversed the claims administrator's January 13, 2012, decision denying Ms. Perkins's request for authorization of TENS unit supplies, office visits, and medications. The Court has carefully reviewed the records, written arguments, and appendices contained in the briefs, and the case is mature for consideration.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision is appropriate under Rule 21 of the Rules of Appellate Procedure.

Ms. Perkins injured her neck on August 6, 1993, while operating a piece of machinery and the claim was later held compensable for a cervical sprain/strain. Following the compensable injury, Ms. Perkins sought treatment with Michael Cozza, M.D., who treated her with various medications, physical therapy, and a TENS unit for chronic neck, shoulder, and arm discomfort. A cervical spine MRI was performed on May 5, 1997, and revealed disc bulges at C3-4, C4-5, and C5-6 with degenerative changes present at all three levels. On December 4, 2006, Dr. Cozza authored a statement of medical necessity and indicated that Ms. Perkins would require TENS

1

unit supplies, non-steroidal anti-inflammatory drugs, pain medications, and physical therapy for the remainder of her lifetime. On May 19, 2011, Dr. Cozza authored a second statement of medical necessity indicating that Ms. Perkins requires TENS unit supplies.

On January 5, 2012, Richard Stigliano, D.O., performed a records review. He opined that the 1993 cervical sprain should have resolved spontaneously with or without treatment within twelve to sixteen weeks, and therefore no further treatment is necessary. He further opined that the continued use of a TENS unit and pain medication in relation to the 1993 injury is not reasonable given the length of time that has elapsed. On January 13, 2012, the claims administrator denied further payment for medications, TENS unit supplies, and office visits based on Dr. Stigliano's report.[1] Dr. Stigliano issued a second report on March 12, 2012, reiterating the conclusions expressed in his initial report.

On February 27, 2013, Victoria Langa, M.D., performed an independent medical evaluation. She diagnosed Ms. Perkins with a resolved cervical sprain/strain and age-related, diffuse, multilevel degenerative disc disease/degenerative joint disease with disc space narrowing, osteophyte spurring, and neuroforaminal narrowing. Dr. Langa opined that Ms. Perkins has long-since reached maximum medical improvement in relation to the 1993 cervical sprain/strain and noted that Dr. Cozza found that Ms. Perkins had reached maximum medical improvement in 1996. She further opined that Ms. Perkins does not require any further treatment for the 1993 compensable injury including a TENS unit, oral medications, or continuing office visits. Finally, Dr. Langa opined that Ms. Perkins's current complaints arise from age-related cervical degenerative disc disease/degenerative joint disease and ongoing treatment for this degenerative disease is unrelated to the August 6, 1993, injury.

On June 21, 2013, the Office of Judges reversed the January 13, 2012, claims administrator's decision and authorized further office visits and TENS unit supplies based on a finding that both requests are medically related and reasonably required for the treatment of the August 6, 1993, injury.[2] On January 23, 2014, the Board of Review reversed the Office of Judges' Order and denied authorization for the TENS unit supplies, medications, and office visits addressed in the January 13, 2012, claims administrator's decision. Ms. Perkins disputes this finding and asserts that the evidence of record shows that the requested TENS unit supplies, medications, and office visits are necessary for the ongoing treatment of the August 6, 1993, injury.

---

[1] This Court notes that the medications referenced in the January 13, 2012, claims administrator's decision are not identified with any degree of specificity and are simply referenced as "medications". However, the evidentiary record indicates that Ms. Perkins was most recently taking the medications Celebrex, Elavil, and Soma. Additionally, the claims administrator's decision fails to identify the medical professional Ms. Perkins is no longer authorized to see, but it is assumed that the claims administrator references Dr. Cozza and members of his staff.

[2] This Court notes that the Office of Judges' Order did not address the authorization of the unnamed medications for which authorization was denied in the January 13, 2012, claims administrator's decision.

The Office of Judges found that the opinion of Ms. Perkins's treating physician, Dr. Cozza, is more persuasive than the opinions of Drs. Stigliano and Langa when analyzing Ms. Perkins's treatment needs. Further, the Office of Judges noted that the claims administrator has previously granted authorization for TENS unit supplies in the instant claim. The Office of Judges then found that Dr. Cozza's December 4, 2006, and April 19, 2011, statements of medical necessity relate the use of the TENS unit to the treatment of the compensable injury. Additionally, the Office of Judges found that because Dr. Cozza has treated Ms. Perkins with a TENS unit since 1996, his findings regarding her ongoing care are persuasive. Finally, the Office of Judges concluded that because Dr. Cozza is continuing to treat Ms. Perkins, further office visits with him should be authorized.

In reversing the Office of Judges' Order, the Board of Review relied on the opinions of Dr. Stigliano and Dr. Langa, who both opined that Ms. Perkins's current treatment is unreasonable in relation to the August 6, 1993, injury. The Board of Review specifically took note of Dr. Langa's conclusion that Ms. Perkins's current symptoms arise from degenerative disc disease/degenerative joint disease. The Board of Review then concluded that further treatment with medications, TENS unit supplies, and office visits does not constitute medically necessary and reasonably required treatment for the August 6, 1993, injury. Upon review, this Court agrees with the reasoning and conclusions of the Board of Review.

For the foregoing reasons, we find that the decision of the Board of Review is not in clear violation of any constitutional or statutory provision, nor is it clearly the result of erroneous conclusions of law, nor is it based upon a material misstatement or mischaracterization of the evidentiary record. Therefore, the decision of the Board of Review is affirmed.

Affirmed.

**ISSUED:  December 2, 2014**

**CONCURRED IN BY:**
Chief Justice Robin J. Davis
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Allen H. Loughry II

**DISSENTING:**
Justice Brent D. Benjamin